## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| PNC BANK, NATIONAL ASSOCIATION, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION FILE NO.: _____ |
| v. | ) ) | |
| CYMILL PROPERTIES, INC., CYMILL MOTORS, INC., MILLERN P. JARRETT-THORPE, and CYNTHIA O. JARRETT-THORPE, | ) ) ) ) ) | |
| Defendants. | ) | |

## VERIFIED COMPLAINT FOR DAMAGES, IMMEDIATE APPOINTMENT OF A RECEIVER, WRIT OF POSSESSION, ACCOUNTING AND INJUNCTIVE RELIEF

COMES NOW, PNC Bank, National Association ("Plaintiff" or "PNC"), and for its Complaint for Damages, Appointment of a Receiver, Accounting and Injunctive Relief ("Complaint") against Cymill Properties, Inc., Cymill Motors, Inc., Millern P. Jarrett-Thorpe, and Cynthia O. Jarrett-Thorpe (collectively the "Defendants"), shows this Court the following:

## JURISDICTION AND VENUE

1.     PNC is a national banking association chartered pursuant to the laws of the United States of America, incorporated under the laws of the State of

Delaware, with a principal place of business in Pennsylvania.

2.      Cymill Properties, Inc. ("Borrower") is a corporation organized under the laws of the State of Georgia and may be served with process by serving its registered agent and CEO Cynthia O. Jarrett-Thorpe at 5950 Covington Highway, Decatur, DeKalb County, GA 30035, or 5724 Rutland Trace, Lithonia, DeKalb County, Georgia 30058, or wherever its registered agent may be found. Borrower is subject to jurisdiction and venue of this Court pursuant to to 28 U.S.C. § 1332. Borrower is a resident of DeKalb County which is embraced by this Court and this Division.

3.      Cymill Motors, Inc. ("Cymill Motors") is a corporation organized under the laws of the State of Georgia and may be served with process by serving its registered agent and CEO Millern P. Jarrett-Thorpe at 5950 Covington Highway, Decatur, DeKalb County, GA 30035, or 5724 Rutland Trace, Lithonia, DeKalb County, Georgia 30058, or wherever its registered agent may be found. Cymill Motors is subject to jurisdiction and venue of this Court pursuant to 28 U.S.C. § 1332. Cymill Motors is a resident of DeKalb County which is embraced by this Court and this Division.

4.      Defendant Millern P. Jarrett-Thorpe ("Millern") is an individual who may be served with process at 5950 Covington Highway, Decatur, DeKalb County,

GA 30035, or 5724 Rutland Trace, Lithonia, DeKalb County, Georgia 30058, or wherever he may be found. Defendant Millern is subject to the jurisdiction and venue of this Court pursuant to 28 U.S.C. § 1332. Millern is a resident of DeKalb County which is embraced by this Court and this Division..

5.     Defendant     Cynthia     O.     Jarrett-Thorpe     ("Cynthia") ("Cynthia")(collectively, Millern and Cynthia are referred to herein as the "Jarrett-Thorpes")(collectively, the Jarrett-Thorpes and Cymill Motors are referred to herein as "Guarantors")(collectively, Borrower and Guarantors are collectively referred to herein as "Obligors") is an individual who may be served with process at 5950 Covington Highway, Decatur, DeKalb County, GA 30035, or 5724 Rutland Trace, Lithonia, DeKalb County, Georgia 30058, or wherever she may be found. Defendant Cynthia is subject to the jurisdiction and venue of this Court pursuant to 28 U.S.C. § 1332. Cynthia is a resident of DeKalb County which is embraced by this Court and this Division.

6.     The amount in controversy in this action exceeds $75,000.00 as required by 28 U.S.C. § 1332.

## GENERAL BACKGROUND FACTS

7.     On January 31, 2007, Borrower executed that certain Promissory Note to RBC Centura Bank ("RBC") for a loan in the original principal amount of

$760,000.00 (the "Note"). A true and correct copy of the Note is attached hereto as **Exhibit 1**.

8.      On January 31, 2007, Cymill Motors executed that certain Commercial Security Agreement (the "Security Agreement") granting RBC a security interest in Cymill Motors' inventory, chattel paper, accounts, equipment, and general intangibles and the proceeds thereof, as more particularly described therein (the "Collateral"), including any deposit accounts or accounts receivable (the "Accounts") and any proceeds thereof (the "Proceeds"). A true and correct copy of the Security Agreement is attached hereto as **Exhibit 2**.

9.      On January 31, 2007, Cymill Motors executed that certain Commercial Guaranty guaranteeing all indebtedness of Borrower to RBC (the "Cymill Motors Guaranty). A true and correct copy of the Cymill Motors Guaranty is attached hereto as **Exhibit 3**.

10.      On January 31, 2007, Millern executed that certain Commercial Guaranty in favor of RBC, guaranteeing all indebtedness of Borrower to RBC (the "Millern Guaranty"). A true and correct copy of the Millern Guaranty is attached hereto as **Exhibit 4**.

11.      On January 31, 2007, Cynthia executed that certain Commercial Guaranty in favor of RBC, guaranteeing all indebtedness of Borrower to RBC (the

"Cynthia Guaranty") (collectively, the Cymill Motors Guaranty, Millern Guaranty, and Cynthia Guaranty are referred to herein as the "Guaranties"). A true and correct copy of the Cynthia Guaranty is attached hereto as **Exhibit 5**.

12.     On January 31, 2007, the Jarrett-Thorpes executed that certain Security Deed recorded at Deed Book 19631, page 697, DeKalb County, Georgia records (the "Security Deed") granting RBC all their right, title, and interest in that certain real property commonly known as 5950 Covington Highway, Decatur, DeKalb County, Georgia 30035 as more fully described therein (the "Property"), and all rents, revenues, income, issues royalties, profits and other benefits thereof (the "Rents") (collectively, the Note, the Security Agreement, the Guaranties, the Security Deed and all other documents related thereto are referred to herein as the "Loan Documents"). A true and correct copy of the Security Deed is attached hereto as **Exhibit 6**.

13.     PNC is the successor by merger with RBC and is the holder and owner of the Loan Documents.

14.     The Loan Documents are in default because, *inter alia*, the Note matured on January 31, 2017 and the indebtedness owed was not paid.

15.     By letter dated June 23, 2017, PNC accelerated all sums due on the Note and demanded full and immediate payment of all sums due under the Loan

Documents (the "Demand Letter"). A true and correct copy of the Demand Letter is attached hereto as **Exhibit 7**.

16.     Despite said demands, Obligors have failed or refused to pay amounts owed under the Loan Documents.

17.     The Demand Letter also (i) revoked Obligors' right to collect the Rents and demanded turnover of all Rents to PNC (ii) demanded turnover of the Collateral; and (iii) demanded turnover of all Cymill Motors' Accounts.

18.     Despite said demand, Obligors have failed or refused to pay the amounts owed under the Notes, or to turn over the Rents, Accounts or Collateral.

19.     Pursuant to the Loan Documents, Obligors are indebted to PNC on the Note in the principal in the amount of $562,067.10, plus accrued interest as of June 30, 2017 in the amount of $13,492.64, plus late charges in the amount of $29,532.84, together with interest accruing after the date of the Demand Letter at the rate of default rate of 18% per annum until paid in full.

## COUNT I
## SUIT ON NOTE/BREACH OF CONTRACT

20.     The allegations of paragraphs 1 through 19 of this Complaint are incorporated herein by this reference as if set forth fully herein.

21.     Despite proper demand being made upon Borrower for payment of the

amounts due under the Loan Documents, Borrower has failed or refused to make the payments required thereunder.

22.     Pursuant to the Loan Documents, Borrower is indebted to PNC on the Note in the principal in the amount of $562,067.10, plus accrued interest as of June 30, 2017 in the amount of $13,492.64, plus late charges in the amount of $29,532.84, together with interest accruing after the date of the Demand Letter at the rate of default rate of 18% per annum until paid in full.

23.     Borrower has been notified and is hereby re-notified by PNC that PNC intends to enforce the provisions of the Loan Documents relative to the payment of attorneys' fees. Pursuant to the provisions of the Loan Documents and O.C.G.A. § 13-1-11, Borrower has ten (10) days from the date of service of this Complaint upon it within which to pay the sums due under the Loan Documents without also being liable for attorneys' fees. Borrower can avoid the obligation to pay attorneys' fees by paying the sums due under the Loan Documents within ten (10) days after receiving service of this Complaint. If Borrower fails to pay the sums due under the Loan Documents within ten (10) days after the date of service of this Complaint, it shall be liable for attorneys' fees in addition to the sums due under the Loan Documents.

24.     Borrower's failure to pay all sums due under the Loan Documents is

in bad faith, constitutes stubborn litigiousness, and caused PNC unnecessary trouble and expense, thereby entitling PNC to recover its expenses of litigation, including attorneys' fees and costs pursuant to O.C.G.A. § 13-6-11.

## COUNT II
## SUIT ON GUARANTIES

25.    The allegations of paragraphs 1 through 24 of this Complaint are incorporated herein by this reference as if set forth fully herein.

26.    Pursuant to the Loan Documents, Guarantors are indebted to PNC on the Note in the principal in the amount of $562,067.10, plus accrued interest as of June 30, 2017 in the amount of $13,492.64, plus late charges in the amount of $29,532.84, together with interest accruing after the date of this letter at the rate of default rate of 18% per annum until paid in full.

27.    Guarantors have been notified and is hereby re-notified by PNC that PNC intends to enforce the provisions of the Loan Documents and Guaranties relative to the payment of attorneys' fees. Pursuant to the provisions of the Loan Documents and O.C.G.A. § 13-1-11, Guarantors have ten (10) days from the date of service of this Complaint within which to pay the sums due by them under the Loan and Guaranties without also being liable for attorneys' fees. Guarantors can avoid the obligation to pay attorneys' fees by paying the sums due by them under the Loan

Documents and Guaranties within ten (10) days after receiving service of this Complaint. If Guarantors fail to pay the sums due under the Loan and Guaranties within ten (10) days after the date of service of this Complaint, they shall be liable for attorneys' fees at the statutory rate, in addition to sums due under the Loan Documents and Guaranties.

28.     Guarantors' failure to pay all sums due under the Loan Documents and Guaranties is in bad faith, constitutes stubborn litigiousness, and caused PNC unnecessary trouble and expense, thereby entitling PNC to recover its expenses of litigation, including attorney's fees and costs pursuant to O.C.G.A. § 13-6-11.

**COUNT III**
**ACTION FOR APPOINTMENT OF A RECEIVER OF THE PROPERTY AND INJUNCTIVE RELIEF**

29.     The allegations of paragraphs 1 through 28 of this Complaint are incorporated herein by this reference as if set forth fully herein.

30.     The Property and Collateral are assets charged with the payment of debts and there is manifest danger of loss, destruction or material injury to the Plaintiff if a receiver is not appointed to take charge of the Property and Collateral. O.C.G.A. § 9-8-3.

31.     Pursuant to the Security Deed, the Jarrett-Thorpes agreed that after the occurrence of an Event of Default, PNC would be entitled to, *inter alia*, "the

appointment of a receiver to take charge of the Property or any part thereof without alleging or proving, or any consideration given to, the insolvency of Grantor, the value of the Property as security for the Indebtedness, or any other matter usually incident to the appointment of a receiver." (Security Deed, Ex. 6, p. 7).

32.     Further, pursuant to the Security Deed, the Jarrett-Thorpes agreed that after an Event of Default the PNC would be entitled to "enter upon the Property, or any part thereof, and take possession of the Property, excluding therefrom Grantor and all agents, employees and representative of Grantor" (Security Deed, Ex. 6, p. 7).

33.     Pursuant to the Security Deed, the Jarrett-Thorpes also irrevocably, absolutely, presently and unconditionally assigned any leases of the Property and the Rents to the PNC. (Security Deed, Ex. 6, p. 1).

34.     Under the Security Agreement, Cymill Motors agreed, that other than in the ordinary course of its business, "Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral." (Security Agreement, Ex. 2, p. 1).

35.     Under the Security Agreement, Cymill Motors agreed that "all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds, provided however, this requirement shall not constitute consent by Lender to any sale or

other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender." (Security Agreement, Ex. 2, p. 1).

36.     The Security Agreement also provides for the collection and turnover of the Accounts to PNC.

37.     The Security Agreement provides PNC "the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the Rents from the Collateral and apply the proceeds, over and above the cost of receivership against the Indebtedness." (Security Agreement, Ex. 2, p. 4).

38.     Pursuant to the Security Agreement, the Cymill Motors agreed that after an Event of Default the PNC would be entitled to "enter upon the property of Grantor to take possession of any remove the Collateral." (Security Agreement, Ex. 2, p. 4).

39.     Pursuant to the above provisions in the Security Deed and the Security Agreement, Plaintiff is entitled to have a receiver appointed for the Property and Collateral.

40.    The Property has been mismanaged due to, *inter alia*, Obligors' failure to pay the debts related thereto when due and the Obligors have not provided PNC proof the Property is insured as required by the Security Deed.

41.    In addition, PNC has been informed that Cymill Motors intends to shut down its business and no longer utilize the Collateral, such that the Collateral is particularly vulnerable to theft, waste, and dissipation.

42.    Despite demand, Obligors have failed to turn over or otherwise surrender the Rents of the Property to PNC, or otherwise make same available to PNC.

43.    Despite demand, Borrower has failed to turn over the Collateral and Accounts to the PNC, or otherwise make same available to PNC.

44.    The Rents, Collateral, Accounts and Proceeds are easily dissipated and, therefore, there is a manifest danger of injury to PNC if a receiver is not appointed.

45.    Obligors' acts, omissions and mismanagement have severely jeopardized the value of the Property and Collateral, thereby causing harm to PNC's interests.

46.    PNC's primary means of recovering its debt is the Property and Collateral, as the collectability of the Notes and Guaranties is uncertain.

47.    If the Property and Collateral are not properly maintained and managed, the viability of the Property and Collateral will be seriously impacted, the value of the Property and Collateral will be significantly and adversely affected and the Property and Collateral will depreciate in value.

48.    Appointment of a receiver is necessary in order to secure and maintain the value of the Property and Collateral.

49.    PNC hereby demands that Obligors surrender possession of the Property and Collateral to PNC, pay to PNC, its successors and/or assigns, all Rents, Accounts and Proceeds of same in the possession or control of Cymill Motors or the Jarrett-Thorpes after June 23, 2017, and all Rents, Accounts and Proceeds thereafter coming into the Jarrett-Thorpes' possession or control.

50.    Obligors have been notified and are hereby re-notified by Plaintiff that Plaintiff intends to enforce the provisions of the Loan Documents relative to the payment of attorneys' fees. Pursuant to the provisions of the Loan Documents and O.C.G.A. § 13-1-11, Obligors have ten (10) days from the date of service of this Complaint upon them within which to pay the sums due under the Notes without also being liable for attorneys' fees. Obligors can avoid the obligation to pay attorneys' fees by paying the sums due under the Notes within ten (10) days after receiving service of this Complaint. If Obligors fail to pay the sums due under the

Notes within ten (10) days after the date of service of this Complaint, they shall be liable for attorneys' fees at the statutory rate, in addition to sums due under the Notes.

51.     Obligors' failure to pay all sums due under the Notes is in bad faith, constitutes stubborn litigiousness, and caused Plaintiff unnecessary trouble and expense, thereby entitling Plaintiff to recover its expenses of litigation, including attorney's fees and costs pursuant to O.C.G.A. § 13-6-11.

## COUNT IV
## ACTION FOR TEMPORARY RESTRAINING ORDER,
## INTERLOCUTORY INJUNCTION AND PERMANENT INJUNCTION

52.     The allegations of paragraphs 1 through 51 of this Complaint are incorporated herein by this reference as if set forth fully herein.

53.     Because of the defaults set forth above, and because Property, Rents, Collateral, Accounts and Proceeds constitute property of PNC pursuant to the Security Deed and Security Agreement, the failure of Obligors to surrender possession of the Property, Rents, Collateral, Accounts and Proceeds to PNC is causing PNC irreparable harm.

54.     PNC has a substantial likelihood of success on the merits of its claim to compel Obligors to comply with their obligations under the Loan Documents,

and PNC has no adequate remedy at law. Furthermore, granting of the relief requested herein is in the public interest.

55.     PNC is entitled to an injunction restraining Obligors from disposing of the Property, Rents, Collateral, Accounts and Proceeds and requiring Obligors to turnover same to PNC.

56.     Obligors have been notified and are hereby re-notified by Plaintiff that Plaintiff intends to enforce the provisions of the Loans relative to the payment of attorneys' fees. Pursuant to the provisions of the Loan Documents and O.C.G.A. § 13-1-11, Obligors have ten (10) days from the date of service of this Complaint upon them within which to pay the sums due under the Notes without also being liable for attorneys' fees. Obligors can avoid the obligation to pay attorneys' fees by paying the sums due under the Notes within ten (10) days after receiving service of this Complaint. If Obligors fail to pay the sums due under the Notes within ten (10) days after the date of service of this Complaint, they shall be liable for attorneys' fees at the statutory rate, in addition to sums due under the Notes.

57.     Obligors' failure to pay all sums due under the Notes is in bad faith, constitutes stubborn litigiousness, and caused Plaintiff unnecessary trouble and expense, thereby entitling Plaintiff to recover its expenses of litigation, including attorney's fees and costs pursuant to O.C.G.A. § 13-6-11.

**COUNT V**
**ALTERNATIVE COUNT TO THE EXTENT THAT A RECEIVER IS NOT APPOINTED, ACTION FOR IMMEDIATE WRIT OF POSSESSION**

58.     The allegations of paragraphs 1 through 56 of this Complaint are incorporated herein by this reference as if set forth fully herein.

59.     The Note and Security Agreement between Obligors and PNC arose out of a commercial transaction.

60.     Pursuant to the Security Agreement, Cymill Motors agreed, *inter alia*, that after

the occurrence of an event of default, "to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender." (Security Agreement, Ex. 7, p. 4).

61.     On information and belief, Collateral is assembled at the Property.

62.     In the Demand Letter, PNC demanded possession of the Collateral and that Cymill Motors assemble the Collateral and turn it over to PNC. Further PNC demanded immediate possession of Cymill Motors' Accounts and Proceeds and the Rents, that they be tendered to PNC and revoked Obligors' right to collect same.

63.     Despite such demands, Obligors have failed to turn over all of the Rents, Collateral, Accounts and Proceeds, and PNC is uncertain as to the whereabouts of all of same.

64.     It is within the power of Obligors to conceal, waste, encumber, convert, convey or remove the Rents, Collateral, Accounts and Proceeds from the jurisdiction of this Court.

65.     Obligors' failure to surrender possession of the Rents, Collateral, Accounts and Proceeds is causing PNC irreparable harm.

66.     The Rents, Collateral, Accounts and Proceeds are PNC's primary means of recovering the sums due to it. Further, Obligors' continued possession of the Rents, Collateral, Accounts and Proceeds will lessen its value and prospects for recovery.

67.     PNC's Rents, Collateral, Accounts and Proceeds will decline in value and be subject to further conversion or disposition if PNC's rights to possession of the Rents, Collateral, Accounts and Proceeds are not immediately enforced.

68.     Because Obligors have failed or refused to surrender possession of the Rents, Collateral, Accounts and Proceeds there is a danger of destruction, concealment, or deterioration of same, PNC has no adequate remedy at law and its post-judgment remedy is inadequate.

69.     PNC has a substantial likelihood of success on the merits of its claim.

70.     PNC has determined to repossess its Rents, Collateral, Accounts and Proceeds, and is entitled to remove same from their location(s).

71.     Obligors have wrongfully failed or refused to turn the Rents, Collateral, Accounts and Proceeds over to PNC or to allow PNC access to the same, despite PNC's demands to do so.

72.     Pursuant to O.C.G.A. § 44-14-260 *et seq.*, PNC is entitled to an immediate Writ of Possession on the grounds that it has a security interest in the Rents, Collateral, Accounts and Proceeds it wishes to foreclose upon, the possession and access of which has been wrongfully withheld by Obligors, the personal property PNC seeks to foreclose on arose out of a commercial transaction and Cymill Motors has waived its right to notice prior to seizure of the Collateral by PNC.

73.     Alternatively, PNC is entitled to a Writ of Possession to the Collateral, including the Accounts, under O.C.G.A. § 44-14-230 *et seq*.

74.     Obligors have been notified and are hereby re-notified by Plaintiff that Plaintiff intends to enforce the provisions of the Loans relative to the payment of attorneys' fees. Pursuant to the provisions of the Loan Documents and O.C.G.A. § 13-1-11, Obligors have ten (10) days from the date of service of this Complaint

upon them within which to pay the sums due under the Notes without also being liable for attorneys' fees. Obligors can avoid the obligation to pay attorneys' fees by paying the sums due under the Notes within ten (10) days after receiving service of this Complaint. If Obligors fail to pay the sums due under the Notes within ten (10) days after the date of service of this Complaint, they shall be liable for attorneys' fees at the statutory rate, in addition to sums due under the Notes.

75.    Obligors' failure to pay all sums due under the Loans and/or to relinquish control and possession of the Collateral is in bad faith, constitutes stubborn litigiousness, and has caused PNC unnecessary trouble and expense thereby entitling PNC to recover its expenses of litigation, including reasonable attorney's fees and costs pursuant to O.C.G.A. § 13-6-11.

WHEREFORE, PNC demands judgment against Defendants, jointly and severally, on the Note as follows:

a.  On Counts I and II:

    i.  Principal in the amount of $562,067.10;

    ii.  Accrued interest as of June 30, 2017 in the amount of $13,492.64, together with interest accruing after June 23, 2017 at the rate of default rate of 18% per annum;

    iii.  Late charges in the amount of $29,532.84;

      iv. Attorneys' fees and expenses of litigation pursuant to the Loan Documents and O.C.G.A. § 13-1-11 or, in the alternative, under O.C.G.A. § 13-6-11;

b. On Counts III-IV:

      i. That summons issue and that a copy of this Complaint be served upon the Obligors as provided by law and that Obligors be required to appear and answer;

      ii. That this Court appoint a receiver or receivers to take possession of, secure and manage the Property and Collateral in accordance with the Security Deeds and Security Agreements pending the sale of the Property and Collateral under power or payment of the indebtedness owed by Obligors, whichever shall first occur;

      iii. That the receiver be authorized and duly empowered to enter into any broker listing agreements for the sale of all or part of the Property or Collateral, to market the sale of the Property or Collateral, to negotiate contracts for the sale of the Property or Collateral, to enter into any purchase and sale agreement, and to convey said Property or Collateral to third-party purchasers for an amount equal to the debt owed by Obligors to PNC or with PNC's

consent and subject to notices to the parties and court approval thereof;

iv. Alternatively, that this Court permit the sale of the Property or Collateral under power in the Security Deeds, the Security Agreements or applicable law, notwithstanding the appointment of a receiver;

v. That this Court order the Obligors to pay over to the receiver or receivers, or if no receiver is appointed to PNC, its successors and assigns, all Rents, Accounts or Proceeds derived from or held with respect to the Property or Collateral, which were or came into the possession, custody or control of the Obligors or their partners, officers, agents employees and all others acting under their direction or control, including, but not limited to, all security deposits and any escrows established pursuant to any of the Leases after June 23, 2017;

vi. That this Court order the Obligors to turn over to the receiver, or if no receiver is appointed, to PNC, its successors and assigns, all books, accounts, contracts and other business records, including, but not limited to, Books and Records;

vii.   That this Court issue a temporary restraining order enjoining the Obligors and their partners, members, principals, agents, employees, affiliates and all others acting under its direction or control from spending or otherwise disposing of any Rents, Collateral, Accounts or Proceeds derived from or held with respect to the Property or Collateral or later coming into its possession, custody or control;

viii.  That this Court declare the Obligors and their partners, members, agents, employees and all others acting under its direction or control constructive trustees for the benefit of PNC, its successors and assigns, of all Rents, Collateral, Accounts and Proceeds derived from or held with respect to the Property or Collateral;

ix.   That this Court enter an interlocutory injunction and thereafter permanent injunction restraining the Obligors and their partners, members, principals, agents, employees and all others acting under their direction or control from spending or otherwise disposing of any Rents, Collateral, Accounts and Proceeds derived from or held with respect to the Property or Collateral or later coming into their possession, custody or control; and

x.   That the Court order such other legal and equitable relief as it may deem just and proper;

c.   On Count V, in the alternative, and to the extent a receiver is not appointed:

   i.   That an Immediate Writ of Possession issue;

   ii.   That the Borrowers be restrained or enjoined from transferring, removing, or conveying the Rents, Collateral, Accounts or Proceeds;

   iii.   That this Court order the United States Marshal to recover possession of the Rents, Collateral, Accounts or Proceeds;

   iv.   That this Court order that the United States Marshal may use any and all force necessary or appropriate to repossess the Rents, Collateral, Accounts or Proceeds and that the Sheriff or Marshal be authorized to gain entry to the Property where the Rents, Collateral, Accounts and Proceeds are located, or other place where the Rents, Collateral, Accounts and Proceeds are located and take possession thereof;

   v.   That possession of the Rents, Collateral, Accounts and Proceeds be relinquished to PNC;

   vi.   That PNC be awarded attorneys' fees pursuant to O.C.G.A. § 13-1-
         11 or § 13-6-11;

  vii.   That PNC be awarded all court costs; and,

 viii.   That PNC be awarded other legal and equitable relief as the Court
         may deem just and proper;

d.  For post-judgment interest as provided by law;

e.  For all court costs; and

f.  For other legal and equitable relief as the Court may deem just and
    proper.

Respectfully submitted this 21st day of July, 2017.

                                        **ROGERS LAW OFFICES**

                                        */s/ Beth E. Rogers*
                                        Beth E. Rogers
                                        Georgia Bar No. 612092
                                        Lawrence Lee Washburn IV
                                        Georgia Bar No. 562374
                                        The Equitable Building
                                        100 Peachtree Street, Suite 1950
                                        Atlanta, GA 30303
                                        770-685-6320 phone
                                        678-990-9959 fax
                                        brogers@berlawoffice.com
                                        *Attorneys for Plaintiff*

24